IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 10-cv-02871-MSK-KMT

THE MEADOWS AT BUENA VISTA, INC., a Colorado corporation; and
LONESOME PINE HOLDINGS, LLC, a Colorado limited liability company,

       Plaintiffs,

v.

ARKANSAS VALLEY PUBLISHING COMPANY,

       Defendant.

---

## OPINION AND ORDER FOLLOWING RECOMMENDATION BY MAGISTRATE JUDGE

---

THIS MATTER is before the Court on the Recommendation of Magistrate Judge (#**127**) that Plaintiffs' Motion to Amend Complaint (#**95**) be denied. The Plaintiffs filed a timely objection to the Recommendation (#**130**).[1] Having considered the pertinent record, the Court sustains Plaintiffs' Objection, in part, but **ADOPTS** the Recommendation, **DENIES** Plaintiffs' Motion to Amend Complaint and **DISMISSES** all claims against AVPC with prejudice.

### I. Background

This action originated in Chaffee County, Colorado, District Court, and was removed after a Complaint (#**4**) and Amended Complaint (#**5**) had been filed. It arises from a long, acrimonious attempt by Plaintiff The Meadows at Buena Vista to develop a 277 acre project in the Town of Buena Vista ("Town"). After many years of controversy, the Town Board of Trustees decided to put a proposed annexation agreement between the Plaintiffs and the Town of Buena Vista on the November 2008 ballot for public rejection or ratification.

The immediate trigger for this lawsuit was publication of an opinion piece by the Town

---

[1] The determination of the Motion to Amend in this ruling renders the Plaintiff's Motion to Clarify the Finality of Prior Orders and Other Relief (#**142**) moot.

Mayor opposing the ballot issue in the *Chaffee County Times* (the "*Times*"), immediately preceding the election.  Because the election occurred before publication of the subsequent issue of the *Times,* the Plaintiffs were unable to publish a response.  The referendum failed, and the Plaintiffs brought various claims against the Town Mayor (Cara Russell), the Town of Buena Vista[2] and the owner and publisher of the *Times*, Arkansas Valley Publishing Company ("AVPC").

Shortly after removal of the action to this Court,  AVPC moved to dismiss claims against it pursuant to Fed. R. Civ. P. 12(b)(6) (**#10**).  This motion was granted (**#115**), but the claims were dismissed without prejudice.

Between the filing of the Motion to Dismiss and its determination, Plaintiffs twice sought to amend their Amended Complaint to add and clarify claims against Defendants Russell and AVPC.  These motions, (**#24, #38**) were referred to the Magistrate Judge for recommendation. The Magistrate Judge recommended that the motions be granted with regard to claims against Defendant Russell but denied as to claims against Defendant AVPC. (**#60).**  The Plaintiffs objected (**#66**) to the Recommendation.  The Court adopted the Recommendation (**#68),** then reaffirmed its adoption on Plaintiffs' Motions for Reconsideration (#**69, #74**).  The Court specifically found that the proposed claims against AVPC were futile because they were premised upon an alleged agreement between AVPC and Russell, either to deprive the Plaintiffs of their constitutional rights or for tortious interference with Plaintiffs' contractual relations with the Town of Buena Vista, for which insufficient factual allegations had been pled. (**# 84**).

After the denial of the Motions to Amend, Plaintiffs again sought to Amend the Amended

---

[2] Claims against the Town of Buena Vista and Cara Russell were dismissed by stipulation (**#140**).

Complaint (**#95**)[3] "as a final effort to state claims against the defendants Russell and the *Times* "(AVPC).  The motion was referred to the Magistrate Judge, who Recommended that it be denied. (**#127**).  The Plaintiffs again objected (**#130**)**,**  AVPC responded and the Plaintiffs replied**.** It is this Recommendation and Objection that are currently before the Court.

## II.  The Recommendation and Objection

The Recommendation assumed that AVPC had been dismissed as a Defendant (**#127, p. 2**) when AVPC's Motion to Dismiss Claims in the Second Amended Complaint (**#10**) was granted (**#115**).  Thus, the Magistrate Judge found the Plaintiffs' request to further amend to state claims against AVPC to be moot, and recommended denial of the Motion to Amend.  Plaintiffs contend that the Magistrate Judge's assumption was in error, and that they was not precluded from seeking to amend the Second or Third Amended Complaint.

In this respect, the Court agrees with the Plaintiffs.  AVPC's Motion to Dismiss (**#10**) was directed at the Amended Complaint that was filed in the Chaffee County District Court.  Its allegations of  were insufficient to state a claim for the same reason that the Plaintiffs' subsequent attempts to amend were rejected.[4]  However, neither the order of dismissal nor the denial of Plaintiffs' motions to amend precluded further attempts to amend. The granting of the AVPC's Motion to Dismiss was without prejudice[5] and the Order denying the Plaintiffs' earlier motions to

---

[3]Counting the amendments made before the state court, this motion constitutes the Plaintiffs' fifth attempt to clarify and state claims against AVPC.

[4] The claims against AVPC were premised upon the suspicion that there was an agreement between AVPC and Mayor Russell to violate the Plaintiffs' constitutional rights or interfere the Plaintiffs' contractual rights with the Town of Buena Vista.  Putting aside Plaintiffs' conclusory allegations and taking as true the material factual allegations, the only showing of an agreement was that 1) Mayor Russell routinely contributed to as a columnist in the local paper, 2) the local newspaper editorially opposed the referendum to approve an annexation agreement between the Plaintiffs and the Town of Buena Vista, and 3) that Mayor Russell and the newspaper agreed on a headline for and date of publication of her opinion piece just before the election on the referendum.

[5] Technically, claims against parties, rather than parties, themselves, are dismissed from a lawsuit.  Whether dismissal bars a party from re-raising such claims or seeking later amendment

amend did not expressly bar subsequent requests to do so.  Thus, the Plaintiffs' Objection is sustained in this regard.

Having resolved the Motion to Amend with regard to claims against AVPC on mootness grounds, there was no need for the  Magistrate Judge to assess its merits.  Thus, the Court does so *de novo*.

### III.  Standard of Review

**A.      Motions to Amend and the Doctrine of Futility**

Because responsive pleadings had been filed at the time of the filing of the instant Motion to Amend and AVPC did not consent to further amendment, the Plaintiffs require the Court's leave to amend the operative complaint, here the Amended Complaint.  Fed.R.Civ.P. 15(a) Ordinarily, leave to amend is freely given unless there is a showing of: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by amendments previously allowed; (4) undue prejudice to the opposing party; or (5) futility of the amendment.  *Foman v. Davis*, 371 U.S. 178, 182 (1962). A proposed amendment is futile if the complaint, as amended, would be subject to dismissal.  *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007) (quotations omitted).

**B.      Determination of the Sufficiency of the Pleading to Determine Futility**

There is a strong presumption against dismissal for failure to state a claim under Rule

---

depends upon whether the dismissal is with or without prejudice. *Sheldon v. Vermonty*, 269 F.3d 1202, 1207 n.5 (10th Cir. 2001) (as a general matter, a party should be granted an opportunity to amend his claims prior to a dismissal with prejudice); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (dismissal under Rule 12(b)(6) without affording the plaintiff notice or an opportunity to amend is proper only "when it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.").

.

12(b)(6).  *See Cottrell, Ltd. v. Biotrol Int'l, Inc.,* 191 F.3d 1248, 1251 (10th Cir. 1999).  The

relevant standard in determining whether claims are futile is the same standard that is applied to a

motion to dismiss under Fed. R. Civ. P. 12(b)(6).

A claim must be dismissed if a complaint does not contain enough facts to make the claim

"plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is

plausible on its face if a complaint contains sufficient facts for a court to draw an inference that

the defendant is liable for the alleged misconduct.  *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949

(2009) (citing *id.* at 556).  Although a plaintiff is not required to provide detailed factual

allegations in a complaint, it must contain "more than labels and conclusions" or "a formulaic

recitation of the elements of a cause of action" and must "raise a right to relief above the

speculative level." *Twombly*, 550 U.S. at 555.

In applying the *Twombly/Iqbal* standard to a motion under Fed. R. Civ. P. 12(b)(6), the

Tenth Circuit has held that plausibility refers "to the scope of the allegations in a complaint: if

they are so general that they encompass a wide swath of conduct, much of it innocent, then the

plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins

v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).  The

standard is "a middle ground between heightened fact pleading, which is expressly rejected, and

allowing complaints that are no more than labels and conclusions or a formulaic recitation of the

elements of a cause of action, which the Court stated will not do." *Id.* (internal quotation marks

and citations omitted).  The standard must be applied in a manner consistent with the notice

pleading framework set forth in Fed. R. Civ. P. 8(a)(2), which requires only that a complaint give

a defendant "fair notice" of the claim and grounds upon which it rests. *Khalik v. United Air

Lines*, ___ F.3d ___ , Case No. 11-1063 (10th Cir., Feb. 6, 2012) (citations omitted).  The nature

and specificity of the allegations required to state a claim will depend on context. Although a

plaintiff need not plead all facts necessary to state a *prima facie* case in the complaint, the

elements of each alleged cause of action help to determine whether the plaintiff has set forth a plausible claim. *Id.*

In reviewing a complaint under Rule 12(b)(6), a court should accept, as true, all well-pleaded facts and construe all reasonable allegations in the light most favorable to a plaintiff. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). With regard to inferences drawn from factual allegations, they "must be more than speculation and conjecture." *Sunward Corp. v. Dun & Bradstreet, Inc.*, 811 F.2d 511, 521 (10th Cir.1987) (citing *Galloway v. United States*, 319 U.S. 372, 63 S.Ct. 1077, 87 L.Ed. 1458 (1943)). Inferences must be based on the facts alleged; in other words, an inference "is reasonable where 'a probability' exists that a 'conclusion flows from the ... facts.'" *United States v. Bowen,* 527 F.3d 1065, 1076 (10th Cir. 2008) (citation omitted). An inference is not a hypothetical "fact" fabricated *post hoc* in order to arrive at a desired conclusion.

## C.     The Proposed Third Amended Complaint

With these considerations in mind, the Court understands the proposed Third Amended Complaint ("PTAC") to allege the following facts.

In 2005, Plaintiff The Meadows at Buena Vista, Inc sought to develop 277 acre parcel located near the Town of Buena Vista. Plaintiff Lonesome Pine Holdings, LLC owned 274 of the acres and associated water rights. When the Plaintiffs requested that the Town annex the property, the Town conditioned annexation upon assignment of the associated water rights to it. The Plaintiffs did not agree.

Negotiations between the Plaintiffs and the Town continued with limited success. Plaintiffs attribute the pace and adverse outcome to personal and business relationships between various Town Trustees and a competing developer, Dean Hiatt. Of concern to this action was the perceived relationship between Cara Russell (initially a Trustee, then Town Mayor) and Mr. Hiatt. Mr. Hiatt was in business with Ms. Russell's husband and leased residential property to the

Russells.

In February, 2006,  the Town and Plaintiffs entered into a Memorandum of Understanding ("MOU") in which the Town agreed to use good faith efforts to negotiate a water service agreement and annexation agreement with Plaintiffs.   Certain details, including a cash-in-lieu of water dedication value fee, were successfully negotiated.  However, the apparent progress abated at a Town meeting on March 28, 2006.  At that meeting,  the Board of Trustees went into an executive session; at the conclusion of such session the Town reimposed to the condition that  the water rights be transferred to the Town.

At the Town meeting on April 11, 2006 the dispute between the Plaintiffs and Town Trustees became particularly contentious.  Plaintiff The Meadows argued that the Town's position contravened the terms of the MOU, and it accused Ms. Russell of having a conflict of interest created by her relationship with Mr. Hiatt.  The Meadows also accused others of conflicts of interest, particularly the Mayor *pro tem*, Bill Woodhouse who was employed by Mr. Hiatt.  A reporter from the *Chaffee County Times* was present, but no article reported on the allegations of conflict of interest.[6]

While negotiations between the Town and Plaintiffs were ongoing, Mr. Hiatt's business submitted an application for rezoning of land for development.  Although the application anticipated a greater water supply than supported by the attendant water rights, it was approved

---

[6]At Paragraph 27 of the proposed Third Amended Complaint contains a hypothetical conversation between an unidentified "Editor" and "Reporter" at the Times suggesting a decision and rationale for not publishing information about the conflict of interest allegations.  The label of this colloquy is "*Inference,*" but it is not offered "upon information and belief" or with any investigational certification required by Fed. R.Civ.P. 11.  Indeed, Plaintiffs' counsel admits (in an email submitted by AVPC) that this script (and others referenced below) that this is what he imagined could have been said. Because there are no factual allegations from which this hypothetical conversation can be inferred, the Court disregards it as speculative.  Similarly, the Court disregards all factual conclusions based upon such speculation.

by the Town Board of Trustees on June 27, 2006.[7]  Mr. Hiatt posted a letter of credit to secure

performance under a subdivision improvement agreement, but it was not timely called.  Mr.

Hiatt's business filed for bankruptcy protection in 2009 with an outstanding liability to the Town

of $240,000.  The *Times* did not report on the Town's failure to timely call the letter of credit, but

there is no factual allegation that anyone at the *Times* knew of this event.[8]

In  January 2007, the Town and the Plaintiffs entered into a Pre-Annexation Agreement

whereby the water issues were resolved with a tap fee, a cash-in-lieu fee of $6000 per tap and

other arrangements.  In June that year, the Plaintiffs submitted applications for annexation, PUD

and Sketch Plan. The Town and Plaintiffs agreed to a Water Service Agreement and an

Annexation and Development Agreement that were approved on March 25, 2008.  Mayor Russell

did not vote on the issue, but according to the Plaintiffs, the Town Mayor is not entitled to vote.

This decision was followed by a number of citizen petitions opposing the Town's

approval.  As a result, the Town's approvals were withdrawn, then re-instated.  Finally, the Town

Trustees decided to put the agreements on the ballot in the November 2008 election for popular

ratification or rejection.  Numerous debates were held.  The Town, through its Board of Trustees,

endorsed approval of the agreements.

Mayor Russell, however, opposed ratification.  She frequently wrote a column in the

*Times* entitled "Mayor's Focus", and in the edition of the *Times* published just prior to the

---

[7]Plaintiffs take particular offense to this in light of the demand for assignment of their water rights.  They also contend that the consideration of the application was in violation of a long-standing policy requiring that applications be considered based on the date of submission.

[8] With regard to this fact and others, the proposed Third Amended Complaint contains paragraphs entitled "*Inference*" that recite imagined conversations. Paragraphs 34, 52, 59, 63 contain an imagined conversations between an unidentified Reporter and Editor.  Paragraphs 61 and 64 contain an imagined conversation between the Mayor and unidentified Editor.  Paragraph 70 contains an imagined conversation between an unidentified Editor and Owner of the newspaper. Paragraph 72 contains snippets of imagined conversations between the Mayor and Bill Woodhouse, the Mayor and Police Chief, and the Mayor and an unidentified Reporter. For the reasons stated in Footnote 5, these allegations and all factual conclusions based thereon are disregarded as speculative.

election, stated her reasons for opposing the ballot issue under the caption "How Big a Payoff Do you Want?"  Because no subsequent edition of the Times was published prior to the election, the Plaintiffs did not have an opportunity to respond. The ballot measure was defeated by a narrow margin.  Thereafter, the Plaintiffs submitted new applications which were approved at a special election on April 6, 2010.

In the proposed Third Amended Complaint, the Plaintiffs assert the following claims against AVPC:

Claim 12 (Conspiracy to Violate Plaintiffs' Civil Rights, relating to the statements of the Mayor in the Publication under 42 U.S.C. § 1983);

Claim 13 (Conspiracy to Violate Plaintiffs' Civil Rights with Actual Malice, also relating to the statements of the Mayor in the Publication)[9];

Claim 14 (Aiding and Abetting the Mayor's Violation of Plaintiffs' Civil Rights);

Claim 15 (Aiding and Abetting the Mayor's Violation of Plaintiffs' Civil Rights with Actual Malice); and

Claim 16 (Declaratory Judgment).

---

[9]This claim and Claim 15 appear to present a fundamental misunderstanding of the relationship between *New York Times v. Sullivan*, 376 U.S. 254 (1964) and constitutional violations.  Excluding labels and conclusory language, Plaintiffs appear to assert that the Mayor's column contained false statements of fact, which caused them harm, and that the *Times* conspired with (or aided and abetted) the Mayor to bring about this harm to Plaintiffs.  As pled, however, the Plaintiffs contend that the Plaintiff's constitutional rights were violated.

   *Sullivan* provides "a framework for applying the First Amendment to states' abilities to punish defamatory falsehood," requiring a heightened culpable mental state of "actual malice," rather than simple negligence or strict liability.  *United States v. Strandlof*, --- F.3d ----, 2012 WL 247995 at *7 (10th Cir., Jan. 27, 2012).  It does not, however, convert an alleged defamatory false statement by a public official, without more, into a constitutional injury.  As a legal matter, the Court is unaware of any free-standing constitutional right to be free from a government official's publication of false statements.  *Renaud v. Wyoming Dep't of Family Servs.*, 203 F.3d 723, 726-27 (10th Cir. 2000) ("defamation, standing alone, [is] not sufficient to establish a claim for deprivation of a liberty interest.").  Because Plaintiffs have persistently avoided asserting their claims against either the Mayor or AVPC as defamation, the Court will examine only whether they have sufficiently alleged a constitutional harm.

## II. Analysis

As noted, the proposed claims against AVPC are substantially similar to those the proposed Second Amended Complaint, which the Court found deficient. (**#84**)  The Plaintiffs contend that the identified deficiencies in the proposed Second Amended Complaint have been cured, in part, by inclusion of imaginary conversations that have been labeled inferences.  They argue that such inferences are reasonable, and when coupled with stated facts are sufficient to state plausible claims. The Plaintiffs contend that the proposed amendments demonstrate (1) an agreement between the Mayor and the *Times* to form a conspiracy and (2) that the *Times* was aware that the Mayor was engaged in wrongful or illegal conduct.  As to the second issue, the Plaintiffs specifically contend that the *Times* was aware that the Mayor had failed to disclose a conflict of interest, which amounts to a violation of C.R.S. § 18-8-308, and failed to report this to their readers.

Because review of Plaintiff's Motion to Amend and proposed Third Amended Complaint is *de novo*, the referent is not this Court's prior ruling addressing prior proposed amendments to a prior complaint.  Rather, the issue is whether the proposed Third Amended Complaint contains sufficient factual allegations that, taken as true, state plausible claims against AVPC.

A.      **The Elements of the Claims Asserted**

1.      **Conspiracy to Violate Civil Rights (Claims 12 and 13)**

42 U.S.C. § 1983[10] provides that "[e]very person who, under color of any statute,

_____

[10]As noted in the Recommendation (**#60**) first denying Plaintiffs' motion to amend as futile, a conspiracy to violate civil rights may arise under either 42 U.S.C. § 1983 or § 1985.  An essential element of a section 1985 conspiracy claim, however, is the existence of some racial or other class-based, invidiously discriminatory animus behind the conspirator's actions.  *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267–68 (1993).  The Recommendation determined that the Plaintiffs' allegations did not contain any facts that could plausibly state a claim under section 1985 and the Plaintiffs did not object to this portion of the Recommendation.  Reviewing the allegations in the proposed Third Amended Complaint *de novo*, the Court also concludes that there are no allegations that would give rise to an inference that the alleged conspirators were motivated by any racial or other class-based invidious discrimination.

ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia,

subjects, or causes to be subjected, any citizen of the United States or other person within the

jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or

other proper proceeding for redress . . ." The statute creates no substantive civil rights, only a

procedural mechanism for enforcing existing constitutional and other federal rights. *Wilson v.*

*Meeks*, 52 F.3d 1547, 1552 (10th Cir. 1995). Therefore, to assert a claim under section 1983, a

plaintiff must identify (1) the violation of a right secured by the Constitution and laws of the

United States and show facts demonstrating (2) that the deprivation was committed by a person

acting under color of state law. *Hall v. Witteman*, 584 F.3d 859, 864 (10th Cir. 2009).

A § 1983 conspiracy claim can arise when a private actor conspires with state actor to

deprive a person of a constitutional right under color of state law. *See Dennis v. Sparks*, 449 U.S.

24, 29, 101 S.Ct. 183, 187, 66 L.Ed.2d 185 (1980); *see also Gallagher v. Neil Young Freedom*

*Concert,* 49 F.3d 1442, 1453-54 (10th Cir. 1995) (identifying various theories under which state

action may be imputed to the acts of a private party for the purposes of section 1983, including

"joint action," where state officials and private parties have acted in concert in effecting a

particular deprivation of constitutional rights"). "Provided that there is an underlying

constitutional deprivation, the conspiracy claim allows for imputed liability; a plaintiff may be

able to impose liability on one defendant for the actions of another performed in the course of the

conspiracy." *Dixon v. City of Lawton, Okla*., 898 F.2d 1443, 1449 n. 6 (10th Cir. 1990).

Therefore, assuming there is a plausible claim that the Mayor violated the Plaintiffs'

constitutional rights, if the allegations are sufficient to demonstrate a conspiracy between AVPC

and the Mayor to violate the Plaintiffs' constitutional rights, there is a plausible claim against

---

Therefore, the Court only examines whether the Plaintiffs can state a claim under section 1983.

AVPC .  However, to be sufficient, both the conspiracy claim and the claim for deprivation of the constitutional right must be adequately pled.  *Snell v. Tunnell*, 920 F.2d 673, 701 (10th Cir. 1990).

Under Tenth Circuit law, a conspiracy claim brought under 42 U.S.C. § 1983 requires a showing of "at least a combination of two or more persons acting in concert and an allegation of a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective." *Brooks v. Gaenzle*, 614 F.3d 1213, 1227-28 (10th Cir. 2010).  Conclusory allegations of conspiracy are insufficient to state a claim.  *Id.* at 1228.  Moreover, to state a claim under a conspiracy theory, the plaintiff is required to allege that "both public and private actors share a common, unconstitutional goal."  *Gallagher*, 49 F.3d at 1454 (quoting *Cunningham v. Southlake Ctr. for Mental Health, Inc*., 924 F.2d 106, 107 (9th Cir.1991)).

Taking these causes of action together, therefore, the elements of a conspiracy to violate a plaintiff's civil rights require a showing of (1) violation of a right secured by the Constitution and laws of the United States; (2) by a person acting under color of state law and in concert with at least one other person; (3) based on a meeting of the minds, agreement or general conspiratorial objective to deprive the plaintiff of the constitutional right.  Although the Third Amended Complaint need not include a specific factual allegation for each element, the absence of well pled facts affects the "plausibility" of the claim asserted.

### (a) Deprivation of Constitutional Right

Because the alleged conspiracy is between AVPC and the Mayor, we begin the analysis, by focusing upon the allegations that the Mayor violated found in Claim 10 of the proposed Third Amended Complaint. These are that the "hearings held in connection with the plaintiffs' application for development rights were quasi-judicial in nature."  PTAC ¶ 123.  The  Mayor violated the Plaintiffs' right to due process by participating in the hearings on plaintiffs' applications when she had a conflict of interest and by encouraging and supporting the 2008 referendum process (alleged upon information and belief).  PTAC at ¶ 96. By publishing the

column, the Mayor "delegated to herself the opportunity to make an *ex parte* closing argument to the citizens of the Town after the vote in violation of the plaintiffs' due process right to a quasi-judicial hearing [on the various applications] and thereby denied to the plaintiffs due process of law."  PTAC at ¶ 125.

Put most generally, the Court understands the claim to be that the Mayor deprived the Plaintiffs of process due to them in connection with the Town's consideration of their various development related applications.[11]  The starting point for any due process claim is the existence of a protected liberty or property interest. Here, the proposed Third Amended Complaint suggests that the protected interest was the approval of their various development applications.

For due process purposes, a property interest results from a "legitimate claim of entitlement" to some benefit, not the abstract need for, or unilateral expectation of, that benefit. *Hyde Park*, 226 F.3d at 1210.  Generally, in land use regulation cases, the entitlement analysis presents a question of law and focuses on "whether there is discretion in the defendants to deny a zoning or other application filed by the plaintiffs."  *Id.* (quoting *Norton v. Village of Corrales*, 103 F.3d 928, 931-32 (10th Cir.1996)).  The focus is on the degree of discretion given the decisionmaker rather than the probability of a favorable decision.  *Id.* (citation omitted). Therefore, for there to be a plausible claim of denial of due process, the proposed Third Amended Complaint must allege conditions existing under state and local law, "the fulfillment of which

---

[11] The Court notes that the allegations as to who was the decisionmaker is somewhat unclear.  It may depend on whether the ballot measure was binding or non-binding. If the measure was binding, then the Trustees and Mayor had no role in the decisionmaking process and the decision, and thus the alleged deprivation was made by the electorate.

AVPC contends that, according to the PTAC, the ballot measure was not binding but was rather intended as a political tactic, to head off further citizen referendum action. This raises another issue - sufficiency of pleading with regard to causation.  If the only purpose for the election was to assist the Board in making a decision and the ultimate decision made by the Trustees was to approve other applications by the Plaintiffs, the relationship between the Mayor's published opinion and the ultimate decision is not clearly alleged in the proposed Third Amended Complaint..

would give rise to a legitimate expectation" that their applications would be approved. *Id.* Although there are passing comments about deviation from expected procedures in the application process, there are no factual allegations in The Third Amended Complaint that identify the basis upon which the Plaintiffs expected that their applications would be approved.[12] Thus, the factual allegations are inadequate to show a protected interest.

Assuming, however, that there was a protected interest, the next showing that is required is what process was required to protect it. Again, there is no specific allegation, nor is there a statement of what process was denied or whether the denial was procedural or substantive.[13]

For a procedural due process claim there must be allegations identifying the procedure to which Plaintiffs were entitled, but of which they were deprived. *Reedy v. Werholtz*, 660 F.3d 1270 (10th Cir. 2011) ("To establish a procedural-due-process claim, a plaintiff needs to demonstrate not only the possession of a protected property interest but also a denial of an appropriate level of process."). The allegations of the proposed Third Amended Complaint identify no procedural requirements set forth by law or regulation that were violated by the Mayor's action. In addition, as noted by AVPC, a contested election is not a quasi-judicial process with rules regarding the taking of evidence or other procedural protections.

For a substantive due process claim, a plaintiff must demonstrate an arbitrary deprivation of a property right and that the arbitrariness is extreme. *Klen v. City of Loveland, Colo.*, 661 F.3d

---

[12] Ordinarily, the identification of the property/liberty interest is correlated with a description of the injury or deprivation of that interest, which gives rise to the party's standing to bring an action. Here, the existence of an injury is somewhat doubtful. Although the process of consideration of the Plaintiffs' applications was long and arduous, the Plaintiffs ultimately had applications approved by the Town. This occurred after the election. Without allegations as the differences in terms between the applications that were rejected and those approved, it is difficult to determine what injury the Plaintiffs have suffered.

[13] "Procedural due process ensures the state will not deprive a party of property without engaging fair procedures to reach a decision, while substantive due process ensures the state will not deprive a party of property for an arbitrary reason regardless of the procedures used to reach that decision." *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000).

498, 512-513 (10th Cir. 2011) ("The plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking.") (citations omitted). Outrageousness conduct is required to avoid use of §1983 as a replacement for state tort law, and in order to give deference to local policymaking bodies' decisions. *Id.* at 513. It is doubtful that losing a contested election (without demonstrated irregularity in the election itself) is sufficient to shock the conscience.

Finally, it is difficult to understand the application of traditional procedural due process or substantive due process analyses in this context because there are no allegations that the Mayor made the ultimate decision regarding the Plaintiffs' annexation and development applications. As noted, earlier, it is not clear whether the election was the decision with regard to the applications, or whether it simply was advisory to the Board of Trustees. If it was the Board of Trustees that was the decisionmaker, both the decision prior to and after the election favored the Plaintiffs. In either case, it does not appear that the Mayor was the decisionmaker. Indeed, the Plaintiffs specifically allege that the Mayor "was not entitled to vote" on the Plaintiffs' applications at the September 2008 hearing. PTAC ¶ 124.

If the claim against the Mayor is based not on her decisionmaking, but instead on the effect of her actions on the decisionmakers (the electorate or Town Trustees), which is consonant with the allegations that her opinion piece in the Times influenced the election, there could be a claim under section 1983. Such a claim, however, would require a causal nexus between her actions and the decision that resulted in the injury to the property/liberty interest. As noted earlier, whether there is a protected interest is unclear and whether there was a injury to such interest is also unclear. But assuming, without deciding, that both have been adequately alleged, there only  allegation of causation is that publication of the Mayor's column caused the referendum to be defeated. Unfortunately, this statement is purely conclusory, and as a consequence insufficient to allege causation.

**(b) Under Color of State Law**

As noted earlier, for a claim of constitutional deprivation under Section 1983, the actions must have occurred under the "color of law".[14]  With respect to a private party such as AWPC, this requirement can be shown by demonstration of a conspiracy between the private party and a state actor who is acting under color of state law. That would require the Mayor to have been acting, or be perceived as acting, in her official capacity.  The allegations in the proposed Third Amended Complaint not only do not allege this, logically they are inconsistent with this.  Because the Town Trustees endorsed the ballot measure,  the Mayor's contrary position could not be "fairly attributed" to the Town.

**(c) Agreement or Shared Conspiratorial Objective**

Finally, for a plausible § 1983 claim against AVPC, the proposed Third Amended Complaint must allege facts showing that AVPC (or its authorized agent) entered into an agreement with the Mayor to deprive the Plaintiffs of the right to due process.  Although an agreement to conspire may be inferred through circumstantial evidence, *see Snell*, 920 F.2d at 702, conclusory allegations are insufficient.  Inferences must be drawn from properly pled facts and they must be based on speculation.  "To demonstrate the existence of a conspiratorial agreement it simply must be shown that there was 'a single plan, the essential nature and general scope of which [was] know to each person who is to be held responsible for its consequences.'"

---

[14]  The "under color of state law" requirement is "a jurisdictional requisite for any § 1983 action." *Polk County v. Dodson*, 454 U.S. 312, 315 (1981).  "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (citation omitted).  Purely private conduct by state employees that is not "fairly attributable" to the state does not satisfy the "color of law" requirement. *Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995) (citation omitted).  Therefore, "there must be 'a real nexus' between the employee's use or misuse of their authority as a public employee, and the violation allegedly committed by the defendant." *Id*. at 493.  The public employee's authority may be apparent as well as actual. *Id*.

*Id.* (citation omitted).  In addition, the purpose of the conspiracy must be to deprive the plaintiff a constitutional right.  *Gallagher*, 49 F.3d at 1455) (under joint action or conspiracy approach to section 1983 liability, "state and private entities must share a specific goal to violate the plaintiff's constitutional rights by engaging in a particular course of action," it is not enough to show that they shared a common general goal).

Assuming, without deciding, that there is a cognizable claim against the Mayor, to extend this to AVPC,  the allegations in the proposed Third Amended Complaint must identify the agreement between the Mayor and a specific person acting for AVPC, when and how that agreement was reached, and the purpose of the agreement ( and show that its purpose was to deprive the Plaintiff's of a protected interest, which the Court assumes to be the expectation that Plaintiffs' applications would be approved).   The Plaintiffs argue that the allegations show an agreement between AVPC and the Mayor by virtue of the following facts: 1) the Mayor routinely contributed to as a columnist in the local paper, 2) the *Times* editorially opposed the referendum to approve an annexation agreement between the Plaintiffs and the Town of Buena Vista, 3) one of Times reporters signed a petition opposing the project, 3) the Mayor and the newspaper agreed on a headline for and date of publication of her opinion piece, and 4) the *Times* failed to publish the allegations made about her conflict of interest in 2006 and otherwise failed to publish articles showing the Plaintiffs' "side" of the controversy.

The Court appreciates that these actions create suspicion, but taking them as true, they are insufficient to plausibly show a conspiracy between AVPC and the Mayor.  There is no identification of a specific person or people who entered into an agreement with the Mayor, how such person or persons is related to or acted for AVPC, when such agreement was entered into, or what its objective was.[15]  At most, the facts show that the Mayor, one reporter and the editorial

---

[15]  These deficiencies are highlighted by the need to use imaginary conversations in the proposed Third Amended Complaint in order to supply critical facts.   Even the imaginary

staff of the Times opposed ballot issue and someone at the Times agreed to publish the Mayor's

opinion.  Assuming the sufficiency of the allegations in stating a §1983 claim against the Mayor,

of which the Court is doubtful, these allegations do not begin to satisfy the Plaintiffs' burden

under *Twombly/Iqbal* to allege facts that give rise to a reasonable inference that AVPC could be

liable under a conspiracy theory.

Having reviewed the proposed Third Amended Complaint in its entirety, and having given

deference to the truth of the well-pled allegations, the Court finds that the infirmities in pleading

are so numerous and pervasive, that Claims 12 and 13 alleging that AVPC conspired to deprive

Plaintiffs of their civil rights are not plausible.  This being the Plaintiffs' fifth attempt to amend

their Complaint since the inception of the action in the state court, and they acknowledge is there

final attempt to do so, the Motion to Amend is **DENIED** on the grounds that the assertion of such

claims is futile.  Furthermore, because Plaintiffs have no additional facts to assert and have had

multiple opportunities to amend, all claims based on these theories are **DISMISSED** with

prejudice.

### 2.  Aiding and Abetting Violation of Civil Rights or Illegal Conduct (Claims 14 and 15)

The proposed Third Amended Complaint also contains two claims alleging that AVPC

aided and abetted the Mayor's deprivation of the Plaintiffs' civil rights and other illegal activities

by publishing the Mayor's column and by failing to report on her alleged illegal conflicts of

interest.  Under Colorado law, a person is liable for aiding and abetting tortious conduct if the

following elements are established: (1) the party whom the defendant aids performs a wrongful

act that causes an injury; (2) the defendant is generally aware of his role as part of an overall

illegal or tortious activity at the time that he provides the assistance; (3) and the defendant

knowingly and substantially assists the principal violation.  *Holmes v. Young*, 885 P.2d 305, 308

---

conversations are vague, referring only to a generic "Reporter" and "Editor,".

(Colo.App. 1994).  Assuming without deciding that this theory could be applied to a constitutional injury, the Court turns to the facts that could support each element of the claim.

### (a) Wrongful Act

As noted above, there are significant questions as to whether the Plaintiffs have alleged facts that, if true, would establish that the Mayor deprived them of a constitutional right by publishing her column.  Incorporating the prior reasoning with regard to the §1983 claims, here, the allegations are not sufficient to show a wrongful act, that has caused an injury or that AVPC was aware of any involvement in an illegal or tortious activity associated with the publishing of the column.

To the extent that the proposed Third Amended Complaint refers to a separate wrongful act in violation of Colorado state law by failing to disclose the Mayor's conflicts of interest with respect to the project, the Court turns to the applicable provision of Colorado law. As with the prior conspiracy claims, there must be a sufficient allegation that the Mayor engaged in a wrongful act for there to be a sufficient claim that AVPC aided and abetted in that act.

Under Colorado law, it is a criminal offense for a public official to fail to disclose a conflict of interest:

> (1) A public servant commits failing to disclose a conflict of interest if he exercises any substantial discretionary function in connection with a government contract, purchase, payment, or other pecuniary transaction without having given seventy-two hours' actual advance written notice to the secretary of state and to the governing body of the government which employs the public servant of the existence of a known potential conflicting interest of the public servant in the transaction with reference to which he is about to act in his official capacity.
>
> (2) A "potential conflicting interest" exists when the public servant is a director, president, general manager, or similar executive officer or owns or controls directly or indirectly a substantial interest in any nongovernmental entity participating in the transaction.
>
> (3) Failing to disclose a conflict of interest is a class 2

misdemeanor.

C.R.S. § 18-8-308.

The proposed Third Amended Complaint alleges that at the April 2006 meeting, the Plaintiffs' representative made statements accusing the Mayor of having a conflict of interest. There is no allegation that the Mayor failed to disclose a conflict of interest that falls within the Colorado statute - that she failed to disclose that she was "a director, president, general manager, or similar executive officer or owns or controls directly or indirectly a substantial interest in any nongovernmental entity" participating in "a government contract, purchase, payment, or other pecuniary transaction."

**(b) Knowledge of Role as Part of an Overall Illegal or Tortious Activity and Knowing and Substantial Assistance**

In addition, assuming a wrongful act by the Mayor, there is no specific allegation that anyone acting on behalf of AVPC knew of the Mayor's conflict of interest, failure to disclose it or perpetuated or aided in hiding such information. The Plaintiffs argue generally that AVPC "knew" that the Mayor was a "criminal" because individuals at AVPC were aware that the Mayor had violated state law in failing to disclose her conflict of interest. Motion to Amend, **#95**, at 7. Such argument is not reflected in specific allegations in the proposed Third Amended Complaint; even if they were included, they are too general and conclusory to demonstrate knowledge sufficient to state a plausible claim of aiding and abetting.

The final claim against AVPC is for declaratory judgment, which is repetitive of  the substantive claims, which are all futile.

**IT IS THEREFORE ORDERED**

(1)      Upon *de novo* review of the Motion to Amend, the Recommendation of Magistrate Judge (**#127**) is **ADOPTED.**

(2)      The Motion to Amend (**#95**) is **DENIED**, and finding the claims against AVPC to

be futile and the Plaintiffs to have had ample opportunity to state claims against

AVPC, all claims against AVPC are **DISMISSED** with prejudice.

(3)      The Plaintiffs' Motion to Clarify the Finality of Prior Orders (**#145**) is **DENIED**,

as moot.

(4)      All substantive claims against all parties having been resolved by agreement or by

this Order, upon resolution of the pending Motion for Attorney fees (**#143**), the

Clerk is directed to close the case.  The Plaintiffs shall have 7 days from the date

of this Order to respond to the Motion for Attorney fees.

DATED this 15th day of February, 2012.

**BY THE COURT:**

Marcia S. Krieger
United States District Judge