**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Honorable Marcia S. Krieger**

**Civil Action No. 10-cv-02871-MSK-KMT**

**THE MEADOWS AT BUENA VISTA, INC., and**
**LONESOME PINE HOLDINGS, LLC,**

**Plaintiffs,**

**v.**

**ARKANSAS VALLEY PUBLISHING COMPANY,**

**Defendant.**

---

**ORDER GRANTING MOTION FOR ATTORNEY'S FEES**

---

THIS MATTER is before the Court on the Motion for Award of Attorneys' Fees (#**143**) filed by Defendant Arkansas Valley Publishing Company ("AVPC"), the Plaintiffs' response (#**147**) and AVPC's reply. (#**148**). Having considered the same, the Court **FINDS** and **CONCLUDES** the following.

**FACTS**

On November 3, 2010, the Plaintiffs commenced this action in the Colorado District Court for Chaffee County. It amended its Complaint shortly thereafter, and on the strength of the Amended Complaint, on November 23, 2010, the Defendant removed **(# 1)** the action to this Court.

In summary, the Plaintiffs' Amended Complaint relates to an attempt by the Plaintiffs to construct a commercial and residential development that the Town of Buena Vista would thereafter annex. It recites, in exacting detail, negotiations the Plaintiffs had with the Town over various issues, as well as highlights certain conflicts of interest that the Plaintiffs contend certain

Town officials considering the project failed to resolve. In 2008, the annexation plan was put to a public vote via referendum. On the eve of that vote, the Defendant, as publisher of the *Chaffee County Times*, published a column from the Town's Mayor urging a vote against the annexation. The ensuing public vote narrowly rejected the proposed annexation.

On these (and many other) facts, the Plaintiffs asserted numerous claims against the Town, the Mayor, and the Defendant.[1] Without reciting each of those claims in detail, it is sufficient to note that they included contract and tort claims sounding in state law, and claims appearing to invoke 42 U.S.C. § 1983 alleging violations of the Plaintiffs' Due Process rights. The only claim asserted against the Defendant here was a claim entitled "aiding and abetting" and alleging that the Defendant "conspired" with the Mayor "to make the publication [of the column] at a time close to the election in order that the Plaintiffs would have no time to rebut the dishonest, incorrect and slanderous inferences contained in [it]"[2] and that it "knew or should have known that the publication [of the column] was in violation of" unspecified "duties and obligations" of the Defendant.

The Defendant moved to dismiss **(# 10)** the Amended Complaint against it, arguing that the Plaintiffs failed to state a cognizable claim. The Plaintiffs responded **(# 18)**, arguing: (i) it was not intending to plead a defamation claim, but rather, a claim for civil conspiracy; (ii) it adequately pled a recognized tort of "aiding and abetting" and a conspiracy to join the Mayor in violating 42 U.S.C. § 1983.

---

[1]The claims against the Town and Mayor were the subject of a stipulated dismissal **(# 139)**, and are not at issue here.

[2]Notwithstanding the quoted language, the Plaintiffs did not assert any claims sounding in slander or defamation.

After briefing of the motion to dismiss had concluded, the Plaintiffs moved **(# 24)** for leave to amend the Amended Complaint, explaining that "the motions to dismiss raise issues which the plaintiffs did not fully consider when they filed their complaints" and suggested that amendment would "avoid the potential necessity of the Court having to review [the motion to dismiss]." The motion noted that the Plaintiffs had conferred with defense counsel and that "they are unwilling to take any position pending review of the proposed amended complaint." The Court denied **(# 28)** this motion due to the Plaintiffs' failure to attach a proposed amended pleading.

The Plaintiffs then filed a "renewed" motion for leave to amend **(# 38)**, which explained that "the [initial] Complaint . . . was hurriedly put together when negotiations between the plaintiffs and the Town . . . broke down" and that the Amended Complaint "was filed for the sole purpose of adding [a plaintiff] within a critical time period to avoid the running of the statute of limitations." It explained that "with the luxury of time, the plaintiffs have prepared the attached First Amended Complaint which presents the facts in a far more coherent form and deals with issues not previously considered." It explained that the initial claim against the Defendant had been restyled into five separate claims that are "restated more precisely," although they "arise out of the same transaction alleged" previously – namely, the publishing of the column. The Plaintiffs explained the new claims as follows:

> First, the plaintiffs split the combined aiding and abetting and conspiracy claim into two claims. Second, the plaintiffs split each of such claims into a claim without actual malice and a claim with actual malice.[3] Lastly, the Fifth claim is a declaratory judgment

[3]This references an argument by the Defendant in its motion to dismiss that, to the extent the Plaintiffs were alleging a defamation claim against it, they failed to plead "actual malice" as

> claim for violation of the plaintiffs' civil rights without a claim for damages as suggested by Judge Pierre N. Leval in his commentary "The No-Money No-Fault Liable (sic) Suit: Keeping *Sullivan* in Its Proper Place," 101 Harv. L. Rev. 1287 . . . ."

(The claims actually recited in the proposed First Amended Complaint do not necessarily bear a particularly close likeness to the claims described above. The crux of the Plaintiffs' claims is largely a complaint that the *Times'* reporting on the annexation issues was biased against it.)

The Defendant opposed **(# 50)** the motion to amend, arguing that the claims stated in the proposed pleading remained deficient and thus, leave to amend would be futile. The Magistrate Judge, to whom the Court referred the motion for leave to amend, agreed, recommending **(# 60)** that leave to amend the claims against the Defendant be denied as futile. After certain ensuring proceedings of no relevance herein, on April 28, 2011, the Court adopted **(# 84)** that recommendation, finding that the Plaintifs' proposed restated claims would nevertheless be subject to dismissal. Several months later, as part of an administrative review of the docket, the Court formally granted **(# 115)** the Defendant's Motion to Dismiss the Amended Complaint against it, citing the reasons given in its April 28, 2011 Order.

Meanwhile, the Plaintiffs filed another motion seeking leave to amend **(# 95)** its claims against the Defendant. It explained that its 'Third Amended Complaint does offer additional facts which, together with prior allegations coupled with reasonable inferences, establish an agreement between [the Mayor] and the *Times* sufficient to form a conspiracy . . . and sufficient to show that the *Times* knew as early as April 11, 2006 that [the Mayor] was engaging in wrongful conduct [by failing to disclose a conflict of interest]." Upon referral, the Magistrate

---

required by *Hustler Magazine v. Falwell*, 485 U.S. 46 (1988) and *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964).

Judge again recommended **(# 127)** that the Plaintiffs' motion be denied as moot in light of the Court's September 2011 Order. The Plaintiffs again filed Objections **(# 130)** to the recommendation, but (following a technical error by the Court) the Court adopted **(# 146)** the recommendation and dismissed the Plaintiffs' claims against the Defendants with prejudice.

In the interim, believing the matter to have been conclusively resolved in its favor, the Defendant filed the instant Motion for Attorney's Fees **(# 143)**. In that motion, the Defendants contend that they are entitled to fees under either: (i) C.R.S. § 13-17-201, which requires an award of fees to a party defending an action that is dismissed for failure to state a claim; (ii) 42 U.S.C. § 1988, which permits an award of fees in favor of a party who is forced to defend against a claim that is "frivolous, unreasonable, or without foundation"; or (iii) both. All told, the Defendant requests slightly more than $ 60,000 in fees.

## ANALYSIS

### A. State law

C.R.S. § 13-17-201 provides that "In all actions brought as a result of . . . and injury to person or property occasioned by the tort of any other person, where such action is dismissed on the motion of the defendant . . . under rule 12(b) of the Colorado rules of civil procedure, such defendant shall have judgment for his reasonable attorney's fees in defending the action."

The statute is considered to be the substantive, not procedural, law of the State of Colorado, such that when the Court entertains state law claims under the doctrine of supplemental jurisdiction, C.R.S. § 13-17-201 applies, even though the dismissal technically occurs under the federal Rule 12. *Jones v. Denver Post Corp.*, 203 F.3d 748, 757 & n. 6 (10th

Cir. 2000).[4]

The statute applies to "injury to person," even when such injury, like that claimed by the Plaintiffs here, is purely economic. *Infant Swimming Research v. Faegre & Benson, LLP*, 335 Fed.Appx. 707, 715 (10th Cir. 2009) (unpublished). It applies even where the plaintiff's claims sound in a mixture of tort and non-tort. *Id.* at 716. And the statute does not grant the Court discretion to make or withhold an award of fees; such award is mandatory if the statutory conditions are met. *Id.*

All of the statutory elements have been met here. The Plaintiffs' claims in the Amended Complaint clearly alleged that they sustained an economic injury as a result of the Defendant's acts, and their response to the Defendant's motion to dismiss clearly asserted that its aiding and abetting claim sounded in tort. *Docket* # 18 at 8, 9. There is no dispute that the adequacy of the Amended Complaint was fully-briefed[5] by the parties under Fed. R. Civ. P. 12(b)(6), and that the Court ultimately granted the Defendant's motion. *Docket* # 115. Thus, the Defendant is entitled

---

[4]The Plaintiffs argue that *Jones* might not be decided the same way since the U.S. Supreme Court issued its decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009), because those decisions heightened the pleading burden in federal court beyond that found in state court. This Court categorically rejects any contention that the two court systems have meaningful differences in the standard of permissible pleading. *See Denver Post Corp. v. Ritter*, 255 P.3d 1083, 1088 (Colo. 2011) (articulating same standard as *Twombly/Iqbal*).

[5]At no time did the Plaintiffs seek a voluntary dismissal of its claims against the Defendant or confess the dismissal of the claims. Such action could have avoided an award of fees. *Crow v. Penrose-St. Francis Healthcare System*, 262 P.3d 991, 998 (Colo. App. 2011). The Plaintiffs suggestion that they instead attempted to amend the claims is not the equivalent of confessing a dismissal, as it did not relieve the Defendant of expending further fees. *See Crandall v. City and County of Denver*, 238 P.3d 659, 665 (Colo. 2010) (relief from operation of statute appropriate where prompt confession of dismissal "prevent[ed] additional defense expenditures")

to an award of its reasonable fees incurred in "defending the action" as it relates to the state-law claims.[6]

The statute is silent on the meaning of the term "fees in defending the action." It is not clear whether such fees are limited to those incurred in making the Rule 12 motion, or whether additional fees – say, those incurred in responding to unsuccessful attempts to cure the defects via amendment – are included. Ultimately, the Court need not address this question, as it finds that, following the initial iteration of state-law claims, the Plaintiffs' claims largely evolved into purely federal claims asserted under § 1983. For the reasons set forth below, the Court would nevertheless award fees with regard to those claims under federal law as well.

**B. Federal law**

42 U.S.C. § 1988 provides that "in an action or proceeding to enforce a provision of [§1983] . . ., the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." The Court may award fees under this statute to a prevailing defendant upon a finding that the plaintiff's action "was frivolous, unreasonable, or without foundation," although it is not required to find that the action was brought in subjective bad faith. *Fox v. Vice*, 131 S.Ct. 2205, 2213 (2011); *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978). In making such an assessment, the Court must be wary of engaging in "*post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Christiansburg, id.* at 421-22. Indeed, the mere fact that a claim was dismissed at the pleading stage does not automatically give rise to a fee award, and Rule 12(b)(6) motions that "receive careful consideration, especially as evidenced by

---

[6]Obviously, state law cannot compel an award of defense costs relating to federal claims.

lengthy, detailed, and reasoned orders" are not typically considered to be "groundless" or "without foundation." *Jane L. v. Bangerter*, 61 F.3d 1505, 1513 (10th Cir. 1995).

Here, the Court finds that the Plaintiffs' § 1983 claims were unreasonable and without foundation. The Plaintiffs concede as much in their initial motion to amend, suggesting that the claims in the Amended Complaint were "not fully considere[d]" when initially brought and that they were "hurriedly put together." Thus, it should come as no surprise that the claims bore no particular resemblance to any cognizable § 1983 claim or theory of recovery, and that the Plaintiffs' arguments that they nevertheless alleged a "conspiracy" between the *Times* and the Mayor to violate the Plaintiffs' civil rights was patently without any supporting factual allegations other than the single instance in which the *Times* published a column written by the Mayor.

The situation did not improve with the Plaintiffs' proposed First Amended Complaint. The "conspiracy to violate civil rights" claims contained therein again made no mention of any agreement between the *Times* and the Mayor, other than that they "conspired to make the publication [of the column] at a time close to the election."[7] The mere fact that the *Times* may have conspired with the Mayor to publish the column at an inopportune time for the Plaintiffs does not even remotely begin to allege the necessary contours of a conspiracy to violate the Plaintiffs constitutional rights. Moreover, the Plaintiffs' inability to recognize that the "actual

---

[7]The remainder of the Twelfth Claim for Relief is devoted to complaining that the *Times* published "negative cartoons" apparently relating to the Plaintiffs, "refus[ed] to report the plaintiffs' side of the development plan according to good journalistic practices," refused to report on other issues the Plaintiffs believe were important, and "used an oversized headline" on the Mayor's column, among other things. None of these remotely relate to any deprivation of the Plaintiffs' constitutional rights, much less allege a conspiracy with state actors to achieve such a deprivation.

malice" standard the repeatedly referenced applies to defamation and similar claims, when no such claims were asserted here, further demonstrates that they had no clear understanding of the legal basis for their allegations or purported claims. *See e.g. Sullivan*, 376 U.S. 283 (holding that "the Constitution delimits a state's power to award damages for libel in actions brought by public officials against critics of their official conduct" without a showing of "actual malice"); *Hustler*, 485 U.S. at 56 (extending *Sullivan* rule to public figures claiming intentional infliction of emotional distress from publication of unflattering material).

Finally, the Court finds that the Plaintiffs' third and final attempt to state a claim against the *Times* was equally frivolous. In addition to relying on its prior frivolous assertions that the *Times*' failure to report stories that the Plaintiffs thought important constitutes some indicia of a conspiracy or violation of the Plaintiffs' civil rights, the proposed Third Amended Complaint included several admittedly-hypothetical dialogues that the Plaintiffs suggested might have occurred, purportedly to illustrate "reasonable inferences" the Court should draw from the facts alleged. For example, in alleging that the *Times* possessed an awareness that its knowledge of the existence of a conflict of interest involving the Mayor and its failure to "disclose the same" constituted a crime under C.R.S. § 18-8-308 (a statute making it a crime for "a public servant" to "fail[ ] to disclose a conflict of interest"), the Plaintiffs' hypothesize that an exchange occurred between a diligent reporter urging the publication of a story exposing the conflict and a jaded editor refusing the request because it would help defeat a disfavored project.[8] Far from

---

[8]The culmination of this particular dialogue:

> Editor: No, let's forget the story.
>
> Reporter: But it was news and it's a crime not to disclose a conflict

illustrating reasonable inferences that can be drawn from the facts, these miniature dramas reflect that the Plaintiffs' attempted claims were constructed out of little more than speculation, misreading of the law, and an utterly unprecedented notion of the legal obligations of a privately-owned newspaper.

Accordingly, the Court concludes that the entirety of the Plaintiffs' pursuit of any federal claims under § 1983 was frivolous, unreasonable, and without foundation, such that it is appropriate under § 1988 to award the Defendants their full fees incurred in defending this action.

**C. Amount of fees**

The Defendant contends that, in total, it incurred a total of $ 60,229.00 in fees in the defense of the action.

In calculating a reasonable fee to be awarded, the Court applies the familiar "lodestar" analysis. *See generally Gisbrecht v. Barnhart*, 535 U.S. 789, 801-02 (2002) ("the 'lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence"); *Jean*, 496 U.S. at 161. In doing so, the Court makes an initial, or "lodestar," calculation by multiplying a reasonable hourly rate by the number of hours reasonably expended by the

---

> of interest.
>
> Editor: Yes, but if there's no conflict of interest, there's nothing to worry about. And if there is a conflict of interests, it will help defeat this project which the newspaper opposes. We can afford to run the risks on this one.
>
> Reporter: Okay, I won't write a story about the conflicts of interest. . . .

*Docket* # 95-1 at 9-10.

attorney(s) on the case. *Id.* at 802; *Hensley v. Eckerhart*, 461 U.S. 424 (1983). Typically, the lodestar figure represents the appropriate amount of fees to be awarded; adjustments to the lodestar figure are made only in unusual situations. *Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, 478 U.S. 546, 564-65 (1986).

The applicant seeking fees bears the burden of demonstrating that the hours expended and rates charged are reasonable. *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1201 (10th Cir. 1986). Here, the Defendant has supported its fee request with an affidavit of its counsel, Thomas Kelley, stating that he is familiar with the hourly rates customarily charged for legal work of this type in the Denver area and that the rates sought by the Defendant are consistent with those figures. The Plaintiffs have proffered no contrary evidence, and in the absence of contradictory evidence, the Court finds that the rates claimed are reasonable.

Mr. Kelley also itemizes the hours spent by himself and others on the Defendants' defense, and contends that all the claimed hours were reasonably incurred in this case. Once again, the Plaintiffs have offered no specific evidence to the contrary. They offer a token argument that the Court "did not rely at all on the First Amendment issues which occupied so many of the briefing pages submitted" by the Defendant," but the Court finds that such arguments were invited by the Plaintiffs first hinting at the possibility of a defamation claim in their original Amended Complaint, and subsequently by repeatedly invoking the defamation-based "actual malice" standard in subsequent pleadings. Accordingly, the Court finds no material opposition to the amount of hours claimed by the Defendant. Thus, the Court finds that the $60,229 figure claimed by the Defendants is the proper lodestar calculation.

The parties have not argued, and the Court finds no basis for, an adjustment to the

lodestar value. The Plaintiffs make several perfunctory arguments that the Court should reduce or deny fees, but none of those arguments are presented in any depth or demonstrate any merit.[9] Thus, the Court finds no adjustments to the lodestar are warranted and the Court awards the Defendant a reasonable attorney's fee in the sum of $ 60,229.

**CONCLUSION**

For the foregoing reasons, the Defendant's Motion for Attorney's Fees **(# 143)** is **GRANTED**. The Clerk of the Court shall enter judgment in favor of the Defendant and against the Plaintiffs, jointly and severally, in the amount of $60,229, with post-judgment interest accruing pursuant to 28 U.S.C. § 1961.

Dated this 26th day of September, 2012

**BY THE COURT:**

Marcia S. Krieger

Marcia S. Krieger
United States District Judge

[9]The Plaintiffs make a passing reference to the fact that one of them is "in bankruptcy" and the other is on the verge of such. With regard to the former, they cite to a Chapter 11 case filed in 2010. The Court's review of the Bankruptcy Court's public records indicates that the case closed on March 19, 2012.